All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and Mr. Honorable Court. Good morning. The first case this morning is 05-1287, Action Gaming v. Alliance Gaming. Mr. Gabriel. Gabriel. Good morning, Your Honors. May it please the Court. Your Honors, we're here today because of a fundamental error made by the District Court in connection with jury instructions regarding the claim construction of the claims at issue in the lawsuit that resulted in a jury verdict which we contend should be reversed because it was prejudicial error in those instructions. We're not here to play games. That's right. We play games in the District Court, but that doesn't show up too much in the record. Correct. What occurred was, even though the parties had vigorously litigated the issue of whether there was a limitation in the method steps at issue, which required that the steps be performed in a certain sequence. And notwithstanding the fact that the court, in its claim construction, recognized that that sequence was a limitation, that there was a required sequence. And notwithstanding the fact that there was one instruction that addressed that sequence in a critical instruction which was given to the jury on how the jury could determine whether there was infringement under the doctrine of equivalence, which was the only infringement issue in the case. The jury was told it could decide whether that sequence limitation existed. But it seems to me, Mr. Gabriel, and maybe you can clarify what I'm missing here, that your arguments to the extent that they might have some merit would go to the fact that the differences were substantial or there is a limitation and you can't find equivalence because it obviates the limitation. And aren't those issues really issues that should have been challenged on JMAL? It seems to me that your hurdle, the road you have to cross to get by the jury instructions, which granted are confusing perhaps in some places or whatever, but that's a pretty high hurdle. So I guess at bottom, why didn't you ask for a JMAL and make the arguments that seemed to underlie what you're saying about the jury instruction in that context? Your Honor, it doesn't underlie it. It's a different argument because this goes to the fundamental question of the respective roles of the court and the jury. When a jury is told, and this is in the appendix on A0072, if you find the steps must be performed in a sequence, that was an instruction to the jury which was objected to. The jury was told it could decide whether there was that limitation. That is a fundamental error in jury instructions. But there are other places. I mean, the jury instructions go on and on and on. They do. And there are other places in the jury instructions, are there not, where it was quite clear, judge makes claim construction, here's the claim construction, and really said the right thing and completely proper. Am I not right? That's true, Your Honor, but this is not a claim construction jury instruction. This is telling the jury how it should decide whether there is infringement under the doctrine of equivalence. So even if there were instructions, and there were, that talk about sequence being a limitation, the jury was told, okay, you have these instructions, the court told you what the claims are all about, the court construed the claims. Now, what should the jury do to determine whether there's infringement under the doctrine of equivalence? And what the jury was told was, you can decide whether that limitation exists. That's what the instruction says. If you find the steps must be performed in a sequence, not only that, this is 0072 in the appendix. Is that reversible error, though? Sure it is, Your Honor, because it hands to the jury the issue of construing the claims. Couldn't the jury have decided that either way there's infringement? Mightn't it have? Maybe it did. It could have, Your Honor, but the issue on whether this instruction is prejudicial is, was there evidence before the jury from which it could have decided there was no infringement under the doctrine of equivalence? And we submit there was, because the jury is being told, if you look at the language of Instruction 28, it's a legal argument about whether sequence is a limitation. In fact, it's a legal argument lifted right out of the Alturas case, because it says to the jury, if it is impossible to perform the steps described in the claims without performing them in the sequences written, then multiplay poker must be played in that order. Where it's possible to perform the steps before, during, or simultaneously with another step, that's a legal argument. That's an argument in the Alturas case, 318F3rd, 1363, when this court was reviewing whether there was a proper claim construction, it looked at what was argued to the court on whether there was a required sequence. And here's what this court said. The patentee argued the steps can occur before, after, or simultaneously with, or between any of the other steps. That's a legal argument. That was for the court to determine. The court can't suggest to the jury, not suggest, instruct to the jury, you can decide. You decide whether there's a required sequence. That's giving to the jury something that's exclusively within the province of the court. It is the most fundamental instruction, or one of the most fundamental, that can occur. When that happens, the jury got claim construction instructions, but this is the infringement instruction. This is it. This is what should we do? How do we decide whether there's infringement? What did the court tell us? The court told us, we can decide. We can decide in the first instance whether sequence is required in order to determine whether there's infringement. That's the fundamental error. That's not a JMOL issue. That is an issue of fundamental prejudicial error in a jury instruction. It was raised in our memorandum, submitted in opposition to this instruction. We specifically advised the court to give this instruction, would result in the jury being given the opportunity to construe the claims. That's what happened. And what should have happened was, the jury should not have been given this instruction, and the jury certainly could have decided there was no infringement under the doctrine of equivalence, based upon the evidence before the jury. That's the test for prejudice. This was objected to. This was inconsistent with substantial justice. You can't say to the jury, sure, there are these required steps. I told you what the claims mean. And then say to the jury, by the way, now I'm going to tell you what you do on infringement, and what you do on infringement is, you can decide whether sequence is a requirement of the claims. There can't be a more fundamental error. This was an issue for the court. The court can't hand it to the jury. And that's what we're saying. And that's not an issue of evidence. It's not a JMOL issue. It's an issue of, was this instruction itself resulting in prejudice? Was it erroneous? And it was. And the fact, Your Honor, that there were other instructions, they deal with construing the claims. This deals with, how do we find infringement? And certainly the jury... If you want to save your rebuttal, you've said the same thing a couple of times. You might want to use it later. Yes. One other issue with respect to prejudice, and this is in our brief, so I'll be 30 seconds. This is exactly what was argued to the jury. What was argued to the jury was, you don't have to find infringement because the sequence is irrelevant. And that's exactly what we suggested to Judge Mahan would happen. Repeatedly, we suggested to the judge, we argued to the judge, they will get up and they will tell the jury sequence is not a requirement. And that's exactly what happened. In the context of arguing about why there was infringement under the doctrine of equivalence, the plaintiff's counsel said to the jury, and we quoted it in the brief, in the opening brief, sequence doesn't matter. It doesn't matter. That's not for an attorney representing a party to argue to a jury how you should construe the claims for purposes of deciding whether there's infringement. That's a court requirement. Let me just briefly touch on several other issues that we raised, but that is a fundamental one. Another characteristic of these claims was the dependency characteristic, which we discussed, which essentially is that the patent claims require a dependency between the cards selected to be held in one hand and the cards duplicated into or also held in the other hands. And what that means is, and the argument to the jury was, and the evidence submitted could have allowed the jury to determine, that that requirement, that limitation was absent in the accused method of play. And in fact, Judge Mahan determined that that characteristic was absent when he granted summary judgment on literal infringement. And we strenuously argued to the court that that limitation needed to be in the instructions of the claim construction instructions on all three claims. And what happened was we detailed it in the record. We did this in our papers. Weren't you found not to literally infringe under all three claims? That's correct. That's correct. But we wanted the same construction that the court used to find there was no infringement on all three claims to be given to the jury. There can't be different claim constructions for doctrine of equivalence as opposed to literal infringement. And the court did not give us those instructions as to two of the claims. And what happened was we put this in our reply to explain it even more. After lots of argument, the court cut off the argument and said to counsel, that's it. We're done. This instruction is out. We're finished. So the notion of any waiver or any failure to raise it, this was raised pre-trial. This was raised during argument. I think it's the record here. One other issue briefly, and that deals with damages. The only point I want to make on that is the whole question of the but-for world to determine damages in a patent case, which is a hypothetical recreation of what would have happened if there was no infringing method and therefore no multi-play poker. Well, yes, it's true. There can be latitude in explaining what would have happened in the but-for world. There has to be some grounded reality that's not completely speculative as to this but-for world. And what happened in this case was the plaintiff's expert hypothesized an analysis based completely, solely, exclusively on what would have happened statewide. There's nothing in the record, nothing, that supports any inference, any basis that what would have happened on a statewide basis had any relationship to the real world. The real world was, as the testimony was, that what occurred occurred on the basis of every location. It was not a statewide analysis. There's got to be some limit to the but-for world, some outer limits and constraints, and that's something about the real world. This was an interesting theory, and this was not a theory that needed to be objected to before trial. This is not a Daubert case where you say no scientific evidence. It's not an evidentiary issue. It's here's the evidence at trial. It doesn't support it in any way. There's no evidence to support this theory. Thank you, Your Honor. Your Honor. Morning. Counsel, may it please the court. Let's cut to the chase. There were no objections to Instruction 28. There were no objections to Instruction 29. There were no objections to Instruction 36. There was no appeal of the Markham ruling. Well, let me cut to the chase a little. Let's assume hypothetically there were objections or somehow the objections were preserved, and let's assume it was clear that the sum and substance of the jury instructions did say it's up to you, jury, to decide that a sequence is a limitation or is required. Would you then concede that there was a problem with the jury instructions? No. Because you've got to look at the jury instructions as a whole. No, but take my hypothetical. Let's assume it was absolutely, I mean, they said it ten times, and it was clear that the jury instruction did consist of allowing the jury to decide whether or not a sequence were required. Would you accept then that there was a problem with the jury? You're asking me to assume that? Yes, hypothetically. If you assume that hypothetically, then there would be possibly plain error in the instruction, and then the necessary consequences would follow. What if the jury got it right? Pardon me? What if the jury got it right? Well, my position is the jury did get it right. What's the error there? The jury did get it right, because the jury was clearly instructed. If you look, if you page through the instructions, the first 20 or so up to page 28, including 28, are basically background instructions. This is what a patent's about. This is what literal infringement means. This is what doctrinal approach means. If there's an insubstantial difference, et cetera, et cetera. Then instruction number 24 says, it is my duty to interpret the patent claims. So before we even get to instruction 28, the judge is telling a jury, it's my duty. When you get to 29, in this case the court has determined as a matter of law that the plain language requires a sequence. My duty. The court's duty. You go to 36. Now that I have instructed you generally about the law, that you must follow in deciding whether the defendants infringe one or more plaintiff's patents, it is time for me to instruct you specifically about the meaning of the claim elements at issue in this case. And what follows, basically, those eight elements, is exactly what the Markman order was. There's also an indication of some additional things. If you look at number seven, the also hold limitation. This is on A81. The also hold limitation of claim 1C of 066 patent requires holding all of those rows, those cards selectively held in one row. Therefore, there is an inherent dependency. They got that instruction. They want it. The complaint here is they didn't get it with respect to the other two claim threes, the claim three of the 873 and the claim three of the 066. They got the inherent dependency and still lost. If you look at the next page, A82, it says it is apparent from the plain language of the claims that a sequence exists. There was no objection to this instruction. Now, because they lost the case, they're saying, hold on, hold on, there's something wrong with the instructions. If you look carefully at all these instructions, what's happening here is the court is trying to explain a little bit about patent law so the jury has it in context what they're about to decide. 28 does that very thing. It's talking about things. You've got to balance what might be an inartful way of expressing things in 28 with what later happened. You've also got instruction number 31, which talks about doctrinal equivalence. This case was presented to this jury as a doctrinal equivalence case, but as we all know, if you have six steps, not every step is going to be an equivalent step. There could be some steps that literally infringe. In other words, that limitation has found exact correspondence in a multiplay poker game. But why isn't instruction 28 saying to the jury, you construe the claim? Well, as I said before, it's fairly inartful. And I think what the court was trying to do in this particular thing is kind of set the tone for the doctrinal equivalence analysis later. Is it so inartful that it invalidates the jury determination? I don't believe so. Because later on in 29, the very next instruction, 29, what's it say? It talks about I find the sequence to be the dealing, selecting, and duplicating or hold to be sequential. In 36, the claim construction, it talks about the fact that it is apparent from the plain language of the claims that a sequence exists. So you're saying that 29 clarifies 28. Yes, sir. But what if the jury thought that under equivalence, even though he says the claim construction requires a sequence, doesn't the language in the instruction in 28, wouldn't it likely lead the jury to conclude that even though that's the literal claim construction, we can go beyond that? No. Because? Because I think the clear indication in 36, instruction 36, which is the piece de resistance in terms of defining the claims, says the dealing limitation means so-and-so. The selecting parts mean so-and-so. I believe there's inherent dependency with respect to claim 1C of 066. I believe the judge is saying it is apparent from the plain language of the claims that a sequence exists. That dominates, in my view, whatever was said in 28. I think Mr. Gabriel said, and so if you heard the same thing, can you confirm that you indeed, it was argued to the jury from your side that a sequence is not a required limitation? That argument was made in connection with the equivalency argument, yes. But we don't know whether the jury found there was a sequence. We don't know whether the jury found that there was an insubstantial difference in terms of the sequence steps. All we know is that the jury found that there was infringement on the doctrine of equivalence, and there was an insubstantial difference between duplicating the holds and duplicating the cards, because that's the way it was presented to the jury. Now— Tell me, where does auto hold come into this? Auto hold is this. In the multiplay poker game, you can play three, five, ten, as many hands as you want, but let's assume for the sake of my scenario it's three hands. Auto hold isn't in the claims, right? The word auto hold is not in the claims, except auto hold is a mechanism that's in the accused's device. It's not in the claims. Those words aren't, except if you look at the claim 1C of 066, the also hell language is kind of like the auto hold. It's what it's talking about, but keep in mind, and I think it might be instructive for me to tell you a little bit about how multiplay poker works. Basically what happens is when you hit the deal draw button to begin with, you'll have, say, three hands, all face up, with suggested holds. The computer makes the suggested holds. It's up to the player to decide whether to select the holds or not select the holds. The evidence was that some 90% of the people play it that way. They adopt the holds because that's the optimum way of playing the game. So they hit the deal draw button the second time, and all the holds are held with the cards you don't want and then what they call poker ranking to determine whether you win or lose. That's kind of the way it works with the auto hold on. Is auto hold relevant to the question of the cross appeal, and I wonder whether it's a proper cross appeal. Well, there was a denial of our motion for summary judgment, and that's what we're appealing from. We're appealing from the fact that it's easy with the auto hold feature off that what happens, and let me give you a scenario. You have the three hands again, and there's suggested holds, or no holds at all. You can simply take your finger, touch screen, and just say it's aces. You can put your two fingers on the two aces and push it all the way down and say those are the ones I want to hold. That's what we're appealing from. So that's how the device works, and that's how we think the claims read term for term with the auto hold off. Can you appeal from the denial of a motion for summary judgment? Yes, Your Honor. Why? Pardon me? Why? Why are we appealing? I mean, why denial of a motion for summary judgment leaves the issue unresolved? Well, let me tell you the practical reason why. The practical reason why is... And you've already won on equivalence. I know. So isn't this just another argument to defend your position? I'm sorry. I didn't know whether you were done or not. Well, I wasn't sure either because there are a lot of issues here. Does that depend on auto hold versus non-auto hold? Let me see if I can explain. Let's say there's a key at the back of the machine and you can turn the auto hold on or you can turn it off. And what we're concerned about, assuming we get affirmed on appeal and they can't use the auto hold feature, somebody could easily turn it on or off and we believe even when it's off there's infringement and it's going to be impossible for us to monitor whether they violated the injunction. Is that a hypothetical case? Is that a case of controversy? Because we believe that they've turned off the switch and the problem is if they turn it back on with these units or machines are put in taverns, in convenience stores, gas stations, places where we couldn't possibly begin to monitor it and that's what we're really concerned about. But you say because the instruction's in place so you're talking about something that potentially is happening after this case is over, let me ask you on that. When you describe the system you said okay, when you've got the auto hold off you can go to, to, to and hold them. But that's not being automatically duplicated. That's something that manually someone has to decide. I want to hold these two cards in this hand, these two in the next hand, whatever. Right, but keep in mind, Your Honor, that the claims do not say automatic. Nothing says automatic and let me read something to you. In other words, auto hold isn't in the claims. Right. In our cross appeal papers, as an example, at A7010 we submitted a statement of fact that said the following. Question, and he can make that hold selection by pressing the six and swiping down the touch screen. Right, answer. He can do it that way or if there's a suggested hold thing, that's another way to play the auto hold. In other words, another way of playing the auto hold is for the player simply to take his finger and press all the way down on the three hands to pick up whatever he wants to hold. So he's selecting the holds. He's selecting them. They're not done, the player doesn't do that. There's still infringement there? No, if he plays different hands, in other words, if he decides to hold one here, different one here, that's not an infringement. So how do you decide what the damages are, whether there's infringement? With the auto hold off, what we know is this, that most people, this is in the record, most people whether they play with the auto hold on because that's the optimum way of playing it. If they made the decision in their own mind, I want the ace and the king, because those are the two high cards, they just swipe down the ace and the king. They don't, very few people ever decide they're going to try to beat the system, so to speak, and get an ace here and a three of hearts here and a four of spades down here. That's just not the way the game's played. Now, with respect to sequencing and inherent dependency, we believe that the judge put enough information in there about sequencing and inherent dependency that was consistent with his Markman ruling and also gave the jury enough information to make their decision. And keep in mind, as I said before, even though they say they want inherent dependency in the other claim threes, the 873 claim three and the 066 claim three, they lost with the inherent dependency construction in instruction 36 on the 066. So where is the prejudicial error? It would be reasonable to assume that even if inherent dependency were crafted on to the 873 claim three and the 066 claim three, that they would have lost because they lost on the 066 patent, which had that. But as I said before, they did not appeal the claim construction. Now they're trying to take issues within the claim construction. We think they waived the right to object. We cited references in our brief to that effect. Well, I see my time is up and I've exhausted my time. Your Honor, on the issue of the test for prejudice, the test for prejudice is could the appealing party have won with the proper jury instructions. We addressed this extensively in the brief. It's not an issue of what would have happened. It's could we have won. And we explain factually and legally why the jury properly instructed and not led us straight into its own claim construction, why there was evidence before the jury such that the appellants could have prevailed on the doctrine of equivalence. Now again, this whole issue of there are instructions that deal with the claims and tell the jury that sequence is required. That's true. But there are only two instructions, two, on how do you decide whether there's infringement. And one of them tells them, the first one that deals with how do we decide, tells them directly you can decide whether sequence is a requirement. So whether there are other instructions that explain what the claims mean and no matter how many times the judge said I determine what the claims mean, what the jury was told was you determine when you decide the issue of infringement whether you think that limitation is there. That's wrong. It's a fundamental plain error. And we can't interview the jury to determine what they did but it's very clear under all the cases we cited for the test for prejudice, could we have won if the jury wasn't told you decide whether there's a sequence? The answer is yes. We could have won because there was evidence there such that the jury could have concluded there was no infringement. Was this argued? It was. Now with respect to waiver, there is no waiver. There was an objection to this very instruction in at least three different places. There was an objection in the pleading entitled defendants memorandum appoints and authorities in support of defendants proposed jury instructions. Specifically at pages 9-1-1-1 and 9-1-1-2 and 9-1-1-6 says specifically plaintiff's proposed post-trial instruction 27A which became 28 is evidence of plaintiff's effort to have the jury construe the claims which effort the court should reject. And in the record starting at pages 45-55 for the next 20 pages there's a colloquy with the court about you can't give this instruction, you can't have the jury decide whether sequence is a requirement, it's inconsistent with Markman, it's inconsistent with the court's obligation. So this wasn't waived, it was asserted. Hunting around for other instructions to cure that kind of fundamental defect doesn't work. Now this is not an inartful instruction. It's completely wrong. If you read it, it's lifted right out of a brief to the court from a Markman hearing. 28 is ambiguous but 36 seems to be pretty clear. 36 followed 28. Well, that's right, Your Honor, but which one should the jury follow? If I'm a juror and I want to know what do I do about sequence? I heard counsel for the plaintiff say sequence doesn't matter, Mr. Gabriel's misleading you. That was closing argument. Now I'm in the jury room and I look at these two instructions and I think, well, let's see. Oh, you know what? I can decide the claims don't have to be performed in that order. What is the short answer to the question? Your time has expired. Okay. The answer is, my short answer is this instruction is completely inconsistent with another one. All right. Thank you. Thank you very much. The case is submitted. Thank you. Thank you.